171310 Domingo Antonio Rosa Pena v. Jefferson Sessions Thank you. Thank you. Good morning, Your Honors. May it please this Honorable Court. My name is Attorney Todd Pomeroy, here today with Co-Counsel Jeffrey Rubin on behalf of Domingo Rosa Pena. May I please reserve two minutes for rebuttal? Yes. Thank you, Your Honor. At issue in this case is a decision from the Board of Immigration Appeals where it erred in ruling that General Laws 266 Section 2 under the Mass Checker Laws, which is the crime of burning a building, they rule that it is categorically a crime involving moral turpitude. This decision is wrong for several reasons, not the least of which is that this Court addressed a similar statute several years ago in 2012 in the De Silva Netto case. At issue in that case was the crime of malicious destruction of property. And this Court ruled in deferring to the BIA that that crime did involve moral turpitude for the reason that the malice required hostility, cruelty, or revenge toward the property of another. The issue in this statute, 266 Section 2, is that you can burn your own property and the definition of malice is adopted by the Massachusetts Supreme Judicial Court in cases such as McLaughlin, for example. The type of malice required only requires an intentional act without justification or excuse. This brings us back to De Silva Netto. In that case, in footnote 8, this Court analyzed a similar statute in a Washington case. So in the Washington criminal mischief statute where the Ninth Circuit held, that crime did not involve moral turpitude because the only action required in that case, in that particular statute, was committing an unlawful act without a justification or excuse, which is nearly identical to the Massachusetts statute at issue here. Our client was accused of and convicted of in Suffolk Superior Court of burning his own grocery store that he owned. And an analysis of this statute, the least of the acts criminalized, can involve burning your own building. It can involve burning property contained within your building. All you need to do is commit an intentional act without any justification or excuse. The level of malice we believe is sufficiently different than the type of malice this Court has ordinarily held to involve moral turpitude. Counsel, I just want to be clear what's at stake here. Because the government has taken the position this crime is a CIMT, that's the basis for removal? That's correct. Is that the only basis for removal? There are two bases for removal. The only basis alleged in the notice to appear in the NTA was that he was convicted of a crime involving moral turpitude. Our client was arrested flying back to Logan Airport and deemed to be an arriving alien. So he was deemed to be inadmissible to the United States. He was accused of having been convicted of a crime involving moral turpitude. Okay. Does it lead to a disqualification of any other type of relief? I simply don't remember. Well, the Court also determined that he was an aggravated felon in contention that we are not raising on appeal anymore. There was a Torres Supreme Court case that dealt with a jurisdictional element similar to our case here. So we did not continue with that argument on appeal. So the BIA did hold that it was an aggravated felony and then further held that it was a crime involving moral turpitude. Doesn't that make him ineligible for relief, the piece that you haven't appealed? Ineligible for the relief that he was seeking, but we believe he may be eligible for other waivers. An issue in this case that affects our client and affects numerous other people who are facing similar circumstances is whether the burning of one's own property, one's own contents, regardless of your intent, as long as it's an intentional act without justification or excuse, the BIA has held that it is categorically a crime involving moral turpitude. Okay. I'm trying to get at the same thing Judge Thompson is trying to get at. Let's suppose we were to remand to the agency. Other than buying time, what good does it do your client if he's an aggravated felon? For example, he does have a 21-year-old U.S. citizen child, so he can attempt to readjust status through appropriate waivers, which he's not eligible to do in the current circumstances. Okay. He's not eligible because of the CIMT or because of the aggravated felon? Our contention is that the CIMT analysis is crucial in these circumstances for him to ever have relief. That's correct. Okay. And if you were to win on this, he would then apply to stay here based on his daughter's U.S. citizenship? Is that basically what's going on? Well, that's correct. But if we were to win here, I think the order would be a termination of proceedings because the allegation against him is that he has a U.S. citizenship. Well, can we talk about that? You're asking us to make a decision that may belong to the BIA. Whether they got it right or not is a different matter. The usual relief in these cases is remand to the agency as opposed to us just flatly saying they were wrong. Correct. One interesting issue in this case was that there was a remand previously by this court, and when the IJ first looked at the statute, he made a determination that it was divisible and that some conduct would not be morally reprehensible and other conduct would be. Well, wasn't he careful? Didn't he say some conduct, like burning some property within your own establishment, may not be a CIMT? That may not, and is a very deliberate choice on his part. He was not making a ruling. What did the BIA say about that? So the BIA essentially agreed with the IJ, said it agreed that the statute was divisible and that some conduct may not involve moral turpitude. Then when it was remanded by this court, the BIA held that it was categorically a crime involving moral turpitude, never reached a divisibility analysis. Okay, under the Supreme Court's case that says that we have to look to the least culpable crime within a state statutory definition of a crime, in your view, is there something left of divisibility analysis now? And then the second question is, given the BIA's sort of non-statement about the lesser included offense here, which is just burning property, may not be a CIMT, why did they not talk about it this time around? Addressing the second question first, it's unclear why they did not talk about it. All the BIA did in ruling this time, it cited two cases. It cited the matter of S, which is a case about a Canadian arson statute that's unlike the statute, because that statute required a culpable state of mind. Yeah, but they could have cited that the first time around. Right, and when they cited it the second time, that statute is dissimilar to the statute at issue in our case. It's unlike the statute. Okay, I'm trying to get at a different point. I understand their reasoning isn't good enough to support their result, but what's left of the divisibility analysis at this point? Well, it's our contention the statute's not divisible. Looking at Mathis, the other cases we've cited in our brief, we could find no Massachusetts case law defining whether these are separate means or separate elements, but the statute punishes all the crime the same way. They get two and a half years in the House of Correction, perhaps ten years in state prison, and we believe that the statute in and of itself is not divisible, and because the statute does contain within it some ways of committing the crime that do not require hostility, cruelty, revenge, or any other culpable or depraved state of mind, the statute cannot be categorically a crime involved in moral turpitude, and that the BIA's decision should be reversed in this case. Thank you. Good morning. May it please the Court, Margo Carter of the United States Attorney General. The petitioner in this case committed a crime involving moral turpitude when he committed arson, and the Court should defer to the Board's reasonable conclusion that this crime was a crime involving moral turpitude. Okay, I've got two problems. The first is, the first time around, you all suggested that certain crimes covered by the statute might not be crimes involving moral turpitude. Second time around, your client just drops that entirely and doesn't explain why it has dropped that entirely. Second problem, while the Massachusetts case law on the malice needed for the arson statute is clear that it is not classical malice, that it is something else, something much less than the classical evil intent, and while the BIA, sorry, you're just here defending them, cites to a case, it doesn't really discuss this malice issue. And the Department of Justice has done an admirable job of supplying reasoning that the BIA didn't use, but we both know that you can't do that. We can't make up for the deficiencies in the BIA decision with arguments presented by the attorneys. So I'm very troubled by all of these things. So if I can address your first point, which was the difference between the original decision and the decision that was rendered on remand. I think in the first decision, the board erred, and that was why the Office of Immigration Litigation recommended remand in that case and sent it back, and also there was intervening law. There was matter of tiras, and this idea of breaking out the crime by the elements had changed, that had shifted. And so I think the board, when it revisited the decision, reconsidered its previous approach. They certainly didn't give much of an explanation for it. Well, and I mean, this is where I think the board provided a decision that wasn't arbitrary or capricious or contrary to law. The board cited its own published on-point precedent decision in matter of best, which arguably should have been cited in the earlier decision. I mean, that was a persuasive and authoritative decision. And matter of best... Of course, as counsel has said, that's the Canadian decision, right? It's not a Canadian decision. It's a Canadian statute that the individual is convicted of. With a different malice requirement. What's that? A different malice requirement. A slightly more expansive malice requirement in matter of best. But what's interesting is that if you look at the board's decision on page 618 of the board's decision in matter of best, what they're really talking about is that the mens rea is something more than mere negligence. And that's really what they're trying to get at. They're not trying to get it at some level of personal malevolence that's required or some sort of evilness or inherent cruelty. They're not really talking about that. And if you look at, like I said, the board's decision, page 618 of the board's decision in matter of best, it really does talk about how we have what we need to establish that this is a crime involving moral turpitude because we have something more than something that's merely accidental. Okay. So under our law we owe you deference on the definition of crime involving moral turpitude, CIMT. But we don't owe you any deference to your reading of state law and what it requires. That's correct, Your Honor. The last time I had one of these situations, as you well know, this court remanded to the agency because we disagreed with the agency's take on what the state law required, or at least we found that the agency hadn't adequately analyzed the question. Is there any reason we shouldn't do that here? He's asking us to make the decision ourselves. Well, and the court can't do that because the court is obligated to give deference to the board on... You're saying we cannot do that, we have to remand. If the issue is what is defining that crime involving moral turpitude, that is something that the board has statutory expertise in. If the issue is the elements of the Massachusetts crime, what are the elements, if there were some confusion, if there weren't jury instructions or there was some issue as to which elements were involved, then that would be a de novo review and there would be no deference on that point. I'm going to ask you the same question I asked your brother. The Supreme Court's reference to you have to take the least culpable crime and no matter what actually happened here, does that apply only to indivisible statutes? The least? I think you would use, even in a divisible statute, you would look at the least culpable conduct and then the issue would be whether or not you could take a peek, I think as Justice Kagan put it. Does the divisibility question then just drop out of this case? Yes, the divisibility question drops out of this case because there hasn't been divisibility alleged by either party. We're all saying that this is categorically, the government is saying that it's categorically a crime involving moral turpitude and the petitioner's argument, I believe, is that it's categorically the other way, but no one is alleging that it's a divisible statute. Okay, thank you. Just continuing on, the crime involving moral turpitude involves two elements, the reprehensibility on the one hand and the scienter on the other. And here, I think we were just discussing that the Massachusetts case law talks about the definition of malice. Malice comprises three elements for the purposes of arson. It's a willful act, a commission of unlawful act, and it's without legal justification or excuse. And the board has historically held that something more than something merely accidental or negligent is what is required in order to meet that scienter portion of the crime involving moral turpitude. And then the other piece of it is the reprehensible conduct, which here is inherent in the crime itself. In this case, the board cited the Eleventh Circuit's decision on this point, which talks about how arson is inherently depraved. The petitioner points to no cases that go in the other direction that say, for example, that arson is not a crime involving moral turpitude. And it would be... The question is which arson we're talking about. If we're supposed to take the destruction of property, your own property by fire within your own building, which I suppose you would say the state would not prosecute that. I mean, I think that, you know, the setting on fire of your own property within your own building, I think the board is right to say that that isn't necessarily non-turpitudinous. Perhaps it's less turpitudinous than setting on fire someone else's property. But to set on fire... Well, they haven't said one way or the other, actually. Right. I mean, I think that the board in its decision says that the fact that it's your own property doesn't render it less turpitudinous. I think that's in their decision. I think it's on either the last page or second to last page of their decision. But the fact that it's one's own property, there's never been an exception carved out. And, again, the board finds out... You know, I can see if it involves a risk of harm to somebody else. But perhaps this statute can be applied to situations with no practical risk of harm to anyone else. I think that it's hard to imagine an example where that has... I mean, there isn't an example that my research uncovered where, for example, like the hypothetical that I suggested in my brief, that somebody lights a candle or something and is prosecuted for that because he would be destroying their own property within the context of... But that would be unlawful. It's... Again, I think under Duenas-Alvarez... Oh, I see I'm out of time. Please continue. Under Duenas-Alvarez, there's no realistic possibility that you would be prosecuted for something like lighting a candle. The government's position on the destruction of your own property, however, is that it's still morally turpitudinous because you are willfully committing an unlawful act with no legal excuse. But in Matter of S, wasn't there an additional factor, which is corruptly? Yes, the Matter of S... Do you mean that under Massachusetts law? No, corrupt. Well, isn't that the point? I think that you can have a scienter that's a little bit more expansive, as you do in Matter of S, and that doesn't mean that just because the scienter involved in our case has that element missing that it's still not reprehensible. You can locate the reprehensibility in either... But isn't that the issue that we have to decide, whether corruptly makes a difference or not? Isn't that the difference between the two parties' position? I think that the petitioner has made much of that, but I think from our perspective, the board's decision in Matter of S didn't hang its hat on the corrupt element in the Canadian statute. But the other words used in the Canadian statute are the same as Massachusetts. Right. Corrupt is the one that's different. Corrupt is the one that's different. On the other hand, the board's analysis makes clear that the board was focused on a mens rea that was something more than merely accidental. And the government's position is that the reprehensibility can be located both within the actual actus reus of setting the fire, as well as within the mens rea. Thank you. Let me ask one more question that arises out of the Me Too movement. Suppose a woman had kept a bunch of photo albums of her and her former boyfriend, and then he comes back and he rapes her or assaults her, and she then sets fire to all of those photo albums. And the fire spreads, or the fire doesn't spread. You can use either scenario. Do you think the board's opinion has taken care of that situation? Yes, and I think for two reasons. I think, one, I think under Duenas-Alvarez, there's really no realistic probability that somebody would be prosecuted in that circumstance. There might be if it burned down her building and the neighboring building. But to the extent that it surpasses the Duenas-Alvarez test, where we haven't seen a case prosecuted like that, to the extent that it moves past that, I think it's possible that somebody would be able to find the legal justification or excuse in that case, too. And it's hard to imagine a case where a jury would really convict on those facts. Well, it might be a defense to a prosecution. She says, oh, I was justified in doing it. I didn't think I was doing anything unlawful. But it could be prosecuted. I mean, the government's position on that would be that it, to the extent that somebody could be prosecuted for that, it seems like somebody probably couldn't be convicted for that, that there would be no unlawful purpose in it. Okay.  Thank you, Your Honor. Just really briefly addressing the hypothetically just raised judgment. Under the government's position, that would be a crime involving moral turpitude because our case, unlike Matter of S, Matter of S requires the corrupt mind, whereas a conviction under 266, Section 2, according to the BIA, does not require a corrupt mind. We see the scenario where many of us last night wanted to burn our, maybe burn our Tom Brady bobblehead dolls because of the result of the Super Bowl. That doesn't necessarily have a corrupt mind, but under the government's position as articulated by the BIA, you'd be culpable. Now, the Matter of S case was what was different and why I believe that's a strong support for moral turpitude is you needed to have not only a corrupt mind coupled with an intentional act and an unlawful act, the property within the building also had to be combustible. So if you knew there was a bunch of wheat in your barn and you lit it on fire, you could burn the whole neighborhood down. Whereas a person in the Me Too movement is burning a photo album and throws it in the sink and turns water on it because she doesn't want to be with her ex-lover anymore who's traumatized her. There's no corrupt mind there. But under the government's approach in this case, both people would be prosecuted in completely different scenarios that require completely different mental states. Now, regarding deference given to the board, we've articulated in our brief several reasons why you should give no Chevron deference at all to the board. They cite two cases, both of which have conclusory statements. The Matter of S case, as we mentioned today in our brief, is a different mental state. It does not really address the burning of one's own property. And the 11th Circuit case, Vuconic or Busconic, that case discusses burning one's own property and then the 11th Circuit says that's morally depraved and debased. It just cites the definition of a crime involving moral turpitude with zero analysis for what's morally turpitude and it's about burning one's own property. So both cases essentially have no analysis that's on point. And to the extent that any Chevron deference would be given, we believe there's a clear error of law in their interpretation of the Massachusetts general laws and the statutes. And for all the reasons cited today as well as in our opening and reply brief, we respectfully suggest that you grant this petition for review. 266 section 2 is not categorically a crime involving moral turpitude and the BIA got it wrong, as did the IJ below. Thank you very much. Thank you both.